WELLS, Judge,
(dissenting).
I respectfully dissent. Because I find that the search lacked requisite reasonableness, I would reverse the order on appeal for the following reasons.
On October 12, 2011, Gregory Williams, an officer with the Miami-Dade County Schools Police Department then working at Miami Northwestern Senior High School, received a telephone call from the Miami-Dade County Police Department Gun Bounty Program.[5] During that call, Williams was advised that the Program had received information that a student at Miami Northwestern Senior High School, identified as K.P., “was possibly in possession of a firearm.” Based on this informa *1134 tion, Officer Williams checked a public schools database and confirmed that K.P., then fifteen years old, was a student at Northwestern. After printing a copy of KP.’s class schedule, Officer Williams notified assistant principal Jorge Bulnes and school security monitors of the information he had received. Because of the upcoming class change and lunch break, they decided that it would be best not to approach K.P. until after his lunch break was over and he was in his next classroom.
After K.P. was in his next class, Bulnes and two security officers went to K.P.’s classroom,[6] took possession of KP.’s backpack, and escorted K.P1, without discussion, to the principal’s conference room. Upon entering the conference room, the backpack was handed to Officer Williams who immediately opened it and found a loaded .380 caliber Lorcin semi-automatic handgun.
K.P. subsequently was charged with carrying a concealed weapon, possession of a firearm on school grounds, and possession of a firearm by a minor. K.P. moved to suppress the handgun claiming it to be the fruit of an unlawful, warrantless search in violation of his Fourth and Fourteenth Amendment rights. Following an eviden-tiary hearing, the motion was denied.
As this court stated in D.G. v. State, 961 So.2d 1063, 1064 (Fla. 3d DCA 2007), “there is no question of the assistant principal’s plenary authority, with or without justification, to summon a student to [his] office.” See also J.D. v. State, 920 So.2d 117, 122 (Fla. 4th DCA 2006) (confirming that “[w]hen school authorities receive information, whether verified or not, involving illegal activities occurring on their campus, calling the suspect student out of class to investigate the report is a reasonable and minimal step in that investigation.”). Nor is there any question that the “standards of reasonable or founded suspicion [enunciated in Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ], rather than the ordinary requirement of probable cause to justify a war-rantless search apply in the supervisor-student-school setting.” D.G., 961 So.2d at 1064 (citing New Jersey v. T.L.O., 469 U.S. 325, 333, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985)) (citation omitted); see also State v. D.S., 685 So.2d 41, 43 (Fla. 3d DCA 1996) (applying T.L.O. to a student search conducted by a police officer employed by the school district, finding that “a search conducted by a school police officer only requires reasonable suspicion in order to legally support the search”).
In this case, no reasonable suspicion existed to support the warrantless search of KP.’s backpack. Standing alone, the uncorroborated, unenhanced anonymous tip received by the school in this case was legally insufficient to satisfy that standard. See Baptiste v. State, 995 So.2d 285, 292 (Fla.2008) (confirming that an anonymous tip unsupported by independent observation or other enhancement is insufficient to satisfy the Terry standard of reasonable suspicion); contra D.G., 961 So.2d at 1064 (finding that a tip given to an assistant principal by a known informant “as opposed to ... a simple anonymous tipster ... is widely regarded as itself providing the reasonable suspicion necessary to meet [the] constitutional test” under Terry and T.L.O.). However, in a school setting, the legality of a student search depends simply on “reasonableness” under all of the circumstances and will be justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school:
*1135 [T]he legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search.... Under ordinary circumstances, a search of a student by a teacher or school official will be “justified at its inception” when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.
T.L.O., 469 U.S. at 341-342, 105 S.Ct. 733 (quoting Terry, 392 U.S. at 20, 88 S.Ct. 1868) (footnotes omitted).
Thus, while the uncorroborated, unen-hanced tip at issue here was legally insufficient to constitute reasonable suspicion that would support a warrantless search of KP.’s backpack, it was sufficient to support removal of K.P. from class for questioning and further observation and for a close examination of the exterior of his backpack to determine whether K.P. had been or was violating either the law or school rules. Had such actions been taken and resulted in information or observations which would reasonably support a determination that K.P. either had been or was violating the law or school rules, then a search of KP.’s backpack would have been justified from its inception. Because none of this took place before KP.’s backpack was searched, the warrantless search of KP.’s backpack was not reasonable under the circumstances and KP.’s motion to suppress should have been granted. I would therefore reverse the order denying his motion to suppress.

. The Gun Bounty Program run by the Miami-Dade County Police Department offers monetary incentives to members of the community who report the whereabouts of illegal firearms. See Miami-Dade County Police Department Gun Bounty Program (last edited September 9, 2013, 1:36 PM), http://www. miamidade.gov/police/involved-gun-bounty. asp (last visited December 18, 2013). Intentionally, no identifying information is taken from those contacting the program nor may any such information be retrieved by the program. Id.

. Williams did not accompany Bulnes and the two security officers to K.P.’s classroom.